IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MAURICE RICHARDSON, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION CV 00-J-0454-S |
| PALM HARBOR HOMES, INC., et al., | ) | |
| Defendants. | ) | |

ENTERED
MAR 3 1 2000

## MEMORANDUM OPINION

Currently before the Court are Defendant Palm Harbor Homes, Inc., and Bombardier Capital, Inc., motions to compel arbitration and stay the proceedings (docs. 4 and 7).

### Statement of the Facts

On October 19, 1998 Plaintiffs Maurice and Sabrina Richardson[1] entered into a contract for the purchase of a manufactured home. Affidavit of Maurice Richardson ("M. Richardson Aff."); Plaintiffs' Brief in Opposition at Exh. A. The home purchased by Plaintiffs was manufactured by Grand Manor Homes and sold by Palm Harbor Homes, doing business as Allstar Mobile Homes. Plaintiff's Exh. C; Complaint at ¶ 3. Financing

---

[1] The Court takes note of the fact the complaint as filed in Jefferson County Circuit Court listed a "Karen Richardson" as a plaintiff yet all other pleadings and submissions to this Court, including an affidavit from Ms. Richardson have her name as "Sabrina."

1

of the home was provided by the seller Allstar Mobile Homes, Inc. (hereinafter "Palm Harbor"), who later assigned their rights under the financing contract to Bombardier Capital, Inc.  Plaintiff's Exh. E; Complaint at ¶ 4.

At the time the home was purchased, Plaintiffs were asked to sign several documents, all of which they allegedly were told were "no big deal" by representatives of Palm Harbor.  One of these documents was entitled "Alabama Arbitration Provision" requiring Plaintiffs to arbitrate any and all claims arising in any way out of the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties, repair, sale/disposition, etc., of the manufactured home. Bombardier's Motion to Compel at Exh. A.  Also included in the package of documents was a one year, express warranty from Grand Manor Homes.[2]  Plaintiff's Exh. C.

The home was delivered to Plaintiffs on November 28, 1998.  At delivery, an inspection was performed by agents of Palm Harbor.  Complaint at ¶ 9.  Palm Harbor noted several defects in the home at this time and promised to return and repair these defects.  *Id.*  Three months later, after the defects had not been repaired and phone calls to Palm Harbor from Plaintiffs went unanswered, Plaintiffs wrote a letter outlining the defects that were uncovered on initial inspection as well as those subsequently discovered.  Complaint at ¶ 10.  After a follow up call to Palm Harbor, repairs were promised within the next few days.  Again, these promises went unfulfilled.  *Id.*  During

---

[2] Grand Manor Homes has not moved this Court to order arbitration.

a final telephone conversation to Palm Harbor, Plaintiffs were informed that no warranty work would be performed. Complaint at ¶ 11. This lawsuit followed.

## Legal Analysis

Defendants Palm Harbor and Bombardier Capital[3] are presently before the Court seeking this Court's order to the Plaintiffs to comply with the terms of the arbitration agreement. Plaintiffs maintain the Magnuson-Moss Warranty Act ("MMWA") precludes enforcement of the arbitration agreement as to claims made under the Act. To the extent MMWA does not preclude arbitration and with respect to those claims made under state law, Plaintiffs argue that the arbitration agreement signed by Mr. Richardson[4] is unenforceable as it was the product of fraud, duress and unconscionability.

The arbitrability of claims made under the MMWA:

Defendant Palm Harbor removed this case from state court on the basis of federal question jurisdiction, citing Plaintiffs' claims under the MMWA. At oral argument, Palm Harbor then argued that the MMWA did not apply to the dealer. It seems to the Court,

---

[3] Though the Court addresses Defendant Palm Harbor specifically, the same analysis applies to Bombardier as it was assigned the same rights and duties under the financing contract.

[4] With respect to any claims asserted by Plaintiff Sabrina Richardson against the defendants in this case, the Court notes that Sabrina Richardson did not sign the arbitration agreement and therefore Defendants' motions to compel with respect to Sabrina Richardson's claims are DENIED.

therefore, that if Palm Harbor's present contention that the MMWA does not apply is indeed correct, that this Court would be without jurisdiction over the claims against the dealer and a *sua sponte* remand would be appropriate. Accordingly, the Court must first address whether the provisions of the MMWA extends to the dealer before addressing the arbitrability of the claims against Palm Harbor.

Palm Harbor contends that the protections afforded to the consumer under the MMWA do not extend to those warranties, express or implied, made to the consumer by a dealer. The Court, relying on the plain language of the MMWA, rejects this argument. The language of the statute includes protection to the consumer from all warrantors by providing a remedy to those consumers injured by a breach of the warrantor's obligation. *See* 15 U.S.C. §§ 2302, *et seq.*. The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty. 15 U.S.C. § 2301(5).

In the case at bar, Palm Harbor was obligated under the implied warranties that naturally run from the sale of a mobile home to the consumer. The existence of these implied warranties made to Plaintiffs by Palm Harbor sufficiently fall within the scope of, and therefore extends protection under, the MMWA. Finding that the MMWA does in fact apply to the dealer, the Court next considers whether the claims against Palm Harbor under the MMWA are arbitrable.

4

*Express Warranties Under MMWA:*

Plaintiffs contend that Palm Harbor breached express warranties that arose from the sale of the mobile home. In support of this contention, Plaintiffs argue they were instructed to contact Palm Harbor for the repair and maintenance of their home, an instruction contained within the express warranty provisions made by the manufacturer, constituting an express warranty on behalf of the dealer as well. Plaintiff's Brief in Opposition at 9; *see also* Plaintiff's Exh. D. The express warranties allegedly made by Palm Harbor are predictably disputed. The MMWA, however, specifically addresses and resolves this issue in favor of Palm Harbor.

Under the MMWA, a warrantor may designate a representative to perform the duties under the written or implied warranty. 15 U.S.C. § 2307. Such a designation does not operate to make that designee a cowarrantor of the written or implied warranties. *Id.* Therefore, the fact that Plaintiffs were instructed to contact the dealership for repairs does not constitute an express warranty on behalf of that dealership.

Plaintiffs next argue Palm Harbor made additional express warranties to the Plaintiffs. The existence of these alleged warranties is of no consequence to the matter at hand, i.e. the motions to compel arbitration, and therefore is not addressed by the Court on this date. Putting aside the issue of the *existence* of express warranties made by Palm Harbor, the Court finds that should such warranties exist, issues arising from their breach are not arbitrable.

5

The arbitration agreement signed by Mr. Richardson and Defendant Palm Harbor constituted a binding, final arbitration agreement. Specifically, the agreement reads:

> "the parties to the Retail Installment Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or the negotiation, purchase, financing, installation, ownership, habitation, manufacture, warranties (express or implied), repair, . . . ,will be settled *solely by means of final and binding arbitration*."

Bombardier's Motion to Compel Arbitration at Exh. A. The final and binding nature of this arbitration agreement precludes its enforcement as to express warranties under the MMWA. *See Wilson v. Waverlee Homes, Inc.,* 954 F.Supp 1530, 1537-1539 (M.D. Ala. 1997); *aff'd without decision,* 127 F.3d 40 (11th Cir. 1997). Accordingly, the Court finds that, with respect to claims under the MMWA, any alleged breaches of Palm Harbor and/or Bombardier's obligations under express warranties are not arbitrable. Consequently, the motions to compel arbitration, with respect to these claims are DENIED.

*Implied Warranties Under the MMWA:*

Plaintiffs' final claim against Palm Harbor under the MMWA alleges the breach of the legislatively and judicially created implied warranties that arise as the result of a matter of law upon the purchase of goods. In *Boyd v. Homes of Legend, Inc.,* the issue of final and binding arbitration of claims of breach of implied warranties under the MMWA was addressed. *See Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423 (M.D. Ala. 1997).

Upon exhaustive review of the MMWA, the Court in *Boyd* held that the MMWA does not preclude binding arbitration of implied warranty claims. *Boyd,* 981 F.Supp at 1440. Finding the analysis and reasoning in *Boyd* persuasive, this Court adopts this holding. Consequently, the Plaintiffs breach of implied warranty claims against Palm Harbor may be arbitrated pursuant to the Federal Arbitration Act provided that the arbitration clause is valid and enforceable under the traditional contract principles.

The Enforceability of the Arbitration Agreement:

Having disposed of the issue of arbitrability under the MMWA, the Court turns now to issue of the validity and enforceability of the arbitration agreement itself. When Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, it "intended courts to 'enforce [arbitration] agreements *into which the parties had entered*," and to 'place such agreements "upon the same footing as other contracts.""" *Allied-Bruce Terminix,* 513 U.S. 265, 271, 115 S. Ct. 834, 838 (1995) (citations omitted) (emphasis added) (brackets in original). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353-3354 (1985).

In determining the parties intent, the Court applies state law governing the formation of contracts. *See First Options of Chicago v. Kaplan,* 514 U.S. 938, 943, 115

S. Ct. 1920, 1924 (1995). Under Alabama law, an individual may avoid the obligations under a contract where he can show the contract was made under fraud or duress or where the terms of the contract were unconscionable. *See Quality Truck and Auto Sales, Inc. v. Yassine,* 730 So.2d 1164, 1167 (Ala. 1999)(*citing Crown Pontiac, Inc. v. McCarrell,* 695 So.2d 615, 617 (Ala. 1997). At oral argument, Plaintiff requested the specific issue of unconscionability be taken up separately. The Court is of the opinion that, given the particular facts of this case, separate briefing on this issue would be prudent. Accordingly, in conformity with the Order entered separately this day, the Court orders the parties submit briefs on the issue of the validity and enforceability of this particular arbitration agreement.

**DONE** and **ORDERED** this 30 day of March , 2000.

Inge P. Johnson
U.S. District Judge

8