FILED
00 APR 20 P...
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MAURICE RICHARDSON, et al.,    )
        Plaintiffs,    )
vs.    )    CIVIL ACTION CV 00-J-0454-S
PALM HARBOR HOMES, INC., et al.,    )
        Defendants.    )

ENTERED
APR 2 0 2000

## MEMORANDUM OPINION

Currently before the Court is Defendant Grand Manor Homes, Inc. motion to dismiss or, in the alternative, compel arbitration and stay the proceedings (doc. 13).

### Statement of the Facts

On October 19, 1998 Plaintiffs Maurice and Sabrina Richardson[1] entered into a contract for the purchase of a manufactured home. Affidavit of Maurice Richardson ("M. Richardson Aff."); Plaintiffs' Brief in Opposition at Exh. A. The home purchased by Plaintiffs was manufactured by Grand Manor Homes and sold by Palm Harbor Homes, doing business as Allstar Mobile Homes. Plaintiffs Exh. C; Complaint at ¶ 3. Financing

---

[1] The Court takes note of the fact the complaint as filed in Jefferson County Circuit Court listed a "Karen Richardson" as a plaintiff yet all other pleadings and submissions to this Court, including an affidavit from Ms. Richardson have her name as "Sabrina."

1

of the home was provided by the seller Allstar Mobile Homes, Inc. (hereinafter "Palm Harbor"), who later assigned their rights under the financing contract to Bombardier Capital, Inc.  Plaintiffs Exh. E; Complaint at ¶ 4.

At the time the home was purchased, Plaintiffs were asked to sign several documents, all of which they allegedly were told were "no big deal" by representatives of Palm Harbor.  One of these documents was entitled "Alabama Arbitration Provision" requiring Plaintiffs to arbitrate any and all claims arising in any way out of the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties, repair, sale/disposition, etc., of the manufactured home.  Grand Manor's Motion at Exh. B..  Also included in the package of documents was a one year, express warranty from Grand Manor Homes.  Plaintiffs Exh. C.

The home was delivered to Plaintiffs on November 28, 1998.  At delivery, an inspection was performed by agents of Palm Harbor.  Complaint at ¶ 9.  Palm Harbor noted several defects in the home at this time and promised to return and repair these defects.  *Id.*  Three months later, after the defects had not been repaired and phone calls to Palm Harbor from Plaintiffs went unanswered, Plaintiffs wrote a letter outlining the defects that were uncovered on initial inspection as well as those subsequently discovered.  Complaint at ¶ 10.  After a follow up call to Palm Harbor, repairs were promised within the next few days.  Again, these promises went unfulfilled.  *Id.*  During a final telephone conversation to Palm Harbor, Plaintiffs were informed that no warranty

work would be performed. Complaint at ¶ 11. This lawsuit followed.

## Legal Analysis

Defendant Grand Manor Homes, Inc., is presently before the Court seeking this Court's order to the Plaintiffs to comply with the terms of the arbitration agreement. Plaintiffs maintain the Magnuson-Moss Warranty Act ("MMWA") precludes enforcement of the arbitration agreement as to claims made under the Act. To the extent MMWA does not preclude arbitration and with respect to those claims made under state law, Plaintiffs argue that the arbitration agreement signed by Mr. Richardson[2] is unenforceable as it was the product of fraud, duress and unconscionability.

### The arbitrability of claims made under the MMWA:

The arbitration agreement signed by Mr. Richardson constituted a binding, final arbitration agreement. Specifically, the agreement reads:

> "the parties to the Retail Installment Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or the negotiation, purchase, financing, installation, ownership, habitation,

---

[2] Upon review of Defendant Grand Manor Home's motion to compel, the Court is of the opinion that Mrs. Richardson can be compelled to arbitrate as her individual claims are based on third party beneficiary status. *See* Defendant's Motion at III (*citing Ex Parte Warren,* 718 So.2d 45 (Ala. 1998); *Infiniti of Mobile, Inc., v. Office,* 727 So.2d 42 (Ala. 1999)). Accordingly, the Court is of the opinion that its earlier order (doc. 11, fn4) is due to be and hereby is RESCINDED.

>       manufacture, warranties (express or implied), repair, . . . ,will
>       be settled *solely by means of final and binding arbitration.*"

Grand Manor's Motion at Exh. B. The final and binding nature of this arbitration agreement precludes its enforcement as to express warranties under the MMWA. *See Wilson v. Waverlee Homes, Inc.,* 954 F.Supp 1530, 1537-1539 (M.D. Ala. 1997); *aff'd without decision,* 127 F.3d 40 (11th Cir. 1997). Accordingly, the Court finds that, with respect to claims under the MMWA, any alleged breaches of Grand Manor's obligations under express warranties are not arbitrable. Consequently, the motions to compel arbitration, with respect to these claims are DENIED.

*Implied Warranties Under the MMWA:*

Plaintiffs' final claim against Grand Manor under the MMWA alleges the breach of the legislatively and judicially created implied warranties that arise as the result of a matter of law upon the purchase of goods. In *Boyd v. Homes of Legend, Inc.,* the issue of final and binding arbitration of claims of breach of implied warranties under the MMWA was addressed. *See Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423 (M.D. Ala. 1997). Upon exhaustive review of the MMWA, the Court in *Boyd* held that the MMWA does not preclude binding arbitration of implied warranty claims. *Boyd,* 981 F.Supp at 1440. Finding the analysis and reasoning in *Boyd* persuasive, this Court adopts this holding. Consequently, the Plaintiffs breach of implied warranty claims against Grand Manor may be arbitrated pursuant to the Federal Arbitration Act provided that the arbitration clause is

valid and enforceable under the traditional contract principles.

<u>The Enforceability of the Arbitration Agreement by a Nonsignatory:</u>

The Eleventh Circuit has previously held that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *See MS Dealer Service Corp. v. Franklin,* 177 F.3d 942 (11th Cir. 1999); *Sunkist Soft Drinks Inc., v. Sunkist Growers, Inc.,* 10 F.3d 753 (11th Cir. 1993). First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. *Sunkist Soft Drinks,* 10 F.3d at 757. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. *Id.* at 758. The second circumstance where arbitration is appropriate is "when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *See MS Dealer,* 177 F.3d at 947 (*citing Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423, 1433 (M.D. Ala. 1997) *vacated on other grounds,* 188 F.3d 1294 (11th Cir. 1999)(internal citations omitted). Grand Manor contends that its falls within at least one of these circumstances.

In the case at bar, Plaintiffs' argument that Palm Harbor is an agent of Grand Manor operates to estop Plaintiffs from avoiding arbitration. If Plaintiffs allegations are

correct and Palm Harbor is in fact an agent of Grand Manor, because of this relationship the claims against each separate defendant are interdependent of each other. Plaintiff alleges Grand Manor breached its express and implied warranties by selling a mobile home with defects and then subsequently refusing to repair such defects. Contained within the contract was the provision delegating the duty of repair from Grand Manor to Palm Harbor. Accordingly, any failure as to the warranties made by Grand Manor could be attributable to Palm Harbor.

Additionally, that the conduct of Palm Harbor would be imputed to Grand Manor if Palm Harbor was an agent of Grand Manor as Plaintiffs allege, indicates an interdependence between the two parties significant enough to equitably estop Plaintiff from avoiding arbitration with the defendant who may ultimately bear the burden of this litigation. Accordingly, Plaintiffs are equitably estopped from avoiding the arbitration provision as it applies to Grand Manor.[3]

**DONE** and **ORDERED** this 20 day of April , 2000.

Inge P. Johnson
U.S. District Judge

---

[3] The Court enters to this holding to the extent that, after deciding the merits of Plaintiffs' unconscionability argument, an issue still under consideration, the Court determines the agreement itself is enforceable under Alabama law.